UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

María Suarez-Torres

    Plaintiff(s)

v.

Municipality of San Juan
Commonwealth of Puerto Rico
Sandia LLC

    Defendant(s)

**CIVIL ACTION**

## COMPLAINT

1.  This is a civil rights action by plaintiff María Suarez ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, sidewalk and/or surrounding business complex known as:

    > Sweet Gallery by Saudi
    > Ave Cesar Gonzalez
    > San Juan, Puerto Rico
    > 18.419793, -66.066998
    > (hereafter collectively referred to as "the Facility")











2.   Plaintiff seeks injunctive and declaratory relief, attorney fees and costs, against Sandia

LLC a corporation, partnership or sole proprietorship doing business as Sweet Gallery by

Saudi (hereinafter collectively referred to as "Defendant" or "Defendants") for systematic

violations its restaurants, pursuant to the Americans with Disabilities Act of 1990 ("ADA").

## JURISDICTION

3.   This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.   Plaintiff's claims are authorized by 28 U.S.C. §§ 2201,  2202, 1367.

## VENUE

5.   All actions complained of herein take place within the jurisdiction of the United States District Court for the District of Puerto Rico, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

6.   Defendant(s) own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

7.   Plaintiff's disability is paraplegia. Plaintiff's cannot walk. Plaintiff requires the use of a wheelchair when traveling about in public. Consequently, Plaintiff is "physically disabled," as defined by all applicable United States laws, and a member of the public whose rights are protected by these laws. The Puerto Rico Department of Motor Vehicles has issued Plaintiff a permanent handicap permit for accessible parking spaces.

## FACTS

8.   The Facility is a public accommodation facility, open to the public, which is intended for nonresidential use and whose operation affects commerce. Plaintiff lives in Bayamon, Puerto Rico, approximately 30 - 35 minutes away from the Facility.  On April 5, 2017, Plaintiff personally visited the Defendant's facility but was denied full and equal access and full and equal enjoyment of the facilities, services, goods, and amenities within Defendant's facility, even though she would be classified as a "bona fide patron". Plaintiff

found that there were *purportedly* accessible parking spaces at the Facility, i.e. some painting and signage but not in compliance with the applicable regulations, as detailed in paragraph 10. On April 5, 2017, Plaintiff personally visited the Defendant's facility but was denied full and equal access and full and equal enjoyment of the facilities, services, goods, and amenities within Defendant's facility, even though she would be classified as a "bona fide patron". Plaintiff's found barriers, as detailed in paragraph 10, which are related to Plaintiff's disability. Plaintiff's plans to return to the property once there is ADA compliance. Tentatively, Plaintiff will return to the Facility on in December 2017 during the Christmas season.

9.    Completely independent of the personal desire to have access to this place of public accommodation free of illegal barriers to access, Plaintiff also acts as a "tester" for the purpose of discovering, encountering, and engaging discrimination against the disabled in public accommodations.

10.    On April 5, 2017, Plaintiff visited the Facility and found that there were alterations to the property not in compliance with the 2010 Standards for Accessible Design. Defendant's alterations to the property triggered the obligations under the 2010 Standards for Accessible Design. On March 15, 2012, new federal accessibility standards for alterations and new construction went into effect, known as the 2010 ADA Standards for Accessible Design ("2010 Standards"). 28 C.F.R. 35.151. The 2010 Standards will impact existing facilities if either: (1) alterations are made, as defendant admitted, or; (2) barrier removal is readily achievable**.** § 12182(b)(2)(A)(iv). Readily achievable means "easily accomplishable and able to be carried out without much difficulty or expense." § 12181(9). If defendant claims that barrier removal is not readily achievable, then discovery is

necessary on the following subjects: (1) each fact which supports defendant's contention that the removal is not readily achievable; (2) each fact that defendant's considered in determining that the removal of all barriers at the subject premises is not readily achievable; (3) oral deposition to each person who participated in defendant's consideration of whether removal of all barriers at the subject premises was not readily achievable; (4) discovery of each document or writing related to defendant's consideration of whether the removal of all barriers at the subject premises was not readily achievable; (5) discovery on the alleged cost of each barrier removal

11.    On April Plaintiff encountered physical barriers that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility. Plaintiff is aware of the following barriers at the Facility:

> Accessible Parking Space Not Properly Marked. At the time of Plaintiff's initial visit to the property in February 2016 there was not even one purportedly accessible parking space (see images above).  However, Plaintiff found on April 5, 2017 that there is a purportedly accessible parking space. However, the configuration of the parking space does comply with the 2010 ADA Standards for Accessible Design – 208.2 502.2. There are parking spaces available for the abled-bodied community, but the current purportedly accessible parking space is not adequate. Always at least one accessible parking space must be van-accessible. 2010 ADA Standards for Accessible Design – 208.2.4. One in every eight accessible spaces, but not less than one, shall be served by an access aisle 96 in (2440 mm) wide minimum and shall be designated 'van accessible''') **Plaintiff found that the purportedly accessible**

**parking space was not properly marked (see image below) and she unable to safely exit her vehicle.** 2010 ADA Standards for Accessible Design – 502.2. 502.3. Plaintiff is aware that this barrier continues to exists and it deters her from exiting her vehicle at the facility and going inside the facility both as a bona fide patron and tester. Removal of this architectural barriers is easily accomplishable and able to be carried out without much difficulty or expense, i.e.  reconfiguration by painting or repainting lines of the parking.  42 U.S.C. § 12182(b)(2)(A)(iv). The following images were taken by the Plaintiff on April 5, 2017 and they corroborate that the parking space and its adjacent access aisle are not properly marked.   Also, below is an image that show how an accessible parking space is properly restriped in accordance with the guidelines of the U.S. Department of Justice. Plaintiff refused to use the available space in front of the Facility (see image below) because she was concerned about her safety given the configuration of the parking space and because using the designated parking space would interfere with the sidewalk.







a.  <u>Accessible Aisle of Parking Space Not Properly Marked</u>. Plaintiff found on April 5, 2017 that the access aisles are not marked to discourage parking in them, in violation of 2010 ADA Standards for Accessible Design – 502.3.3. Plaintiff is aware that this barrier continues to exists and it deters her from exiting her vehicle at the facility and going inside the facility both as a bona fide patron and tester. Removal of this architectural barriers is easily accomplishable and able to be carried out without much difficulty or expense, i.e.  reconfiguration by painting or repainting lines of the parking.  42 U.S.C. § 12182(b)(2)(A)(iv).

b.  Despite that the Facility was built before the ADA was in full force and effect, and business were given ample time to complete those modifications that were readily achievable, defendant never took affirmative steps to restripe its parking space in accordance with the federal regulations. For example, according to Google Earth Pro, the following image was taken in March 2003:



c.   The image above corroborates or tends to show that there were no marked accessible parking spaces in March 2003.

d.   Despite that the Facility was built before the ADA was in full force and effect, and business were given ample time to complete those modifications that were readily achievable, defendant never took affirmative steps to restripe its parking space in accordance with the federal regulations. For example, according to Google Earth Pro, the following image was taken in January 2004:



e.   The image above corroborates or tends to show that there were no marked accessible parking spaces in January 2004.

f.   Despite that the Facility was built before the ADA was in full force and effect, and business were given ample time to complete those modifications that were readily achievable, defendant never took affirmative steps to restripe its parking space in accordance with the federal regulations. For example, according to Google Earth Pro, the following image was taken in November 2006:



g.  The image above corroborates or tends to show that there were no marked accessible parking spaces in November 2006.

h.  Despite that the Facility was built before the ADA was in full force and effect, and business were given ample time to complete those modifications that were readily achievable, defendant never took affirmative steps to restripe its parking space in accordance with the federal regulations. For example, according to Google Earth Pro, the following image was taken in December 2014:



i.  The image above corroborates or tends to show that there were no marked accessible parking spaces in December 2014.

11

j.   Despite that the Facility was built before the ADA was in full force and effect, and business were given ample time to complete those modifications that were readily achievable, defendant never took affirmative steps to restripe its parking space in accordance with the federal regulations. For example, according to Google Earth Pro, the following image was taken in July 2015:



k.   The image above corroborates or tends to show that there were no marked accessible parking spaces in July 2015.

l.   Despite that the Facility was built before the ADA was in full force and effect, and business were given ample time to complete those modifications that were readily achievable, defendant never took affirmative steps to restripe its parking space in accordance with the federal regulations. For example, according to Google Earth Pro, the following satellite images were taken in 2017:







m.  The image above corroborates or tends to show that there were no marked accessible parking spaces in July 2015.

n.  Plaintiff is aware that the purportedly accessible parking space is not identified with a sign that reads "van accessible." 2010 ADA Standards for Accessible Design –

502.6. This violation outside the facility and in the parking lot made it unnecessarily difficult for Plaintiff to use the parking space. Removal of this architectural barriers is easily accomplishable and able to be carried out without much difficulty or expense, i.e. installing sign. 42 U.S.C. § 12182(b)(2)(A)(iv).

o. Plaintiff found on April 5, 2017 that the purported accessible route from the public sidewalk and parking space is severely, deteriorated and it is not stable, firm, and slip-resistant. 2010 ADA Standards for Accessible Design – 206.2.1, 302.1. See The public sidewalk and parking space is severely sloped, fair more than 2%. See also, Section 4.6.3 (requiring that parking spaces and access aisles shall be level with surface slopes not exceeding 1:50 (2%) in all directions). This violation outside the facility made it unnecessarily difficult for Plaintiff to use the parking space and sidewalk. In addition, this violation outside the facility and in the parking lot deters Plaintiff from going inside the Facility as a bona fide patron and tester because she is aware that physical barriers continue to exist. Removal of this architectural barriers is easily accomplishable and able to be carried out without much difficulty or expense, i.e. repair uneven paving, fill small bums and breaks with patches, placing asphalt or other surface, to the maximum extent feasible. 42 U.S.C. § 12182(b)(2)(A)(iv). The image below shows the condition of the sloped and unstable surface on April 5, 2017:



p.  Plaintiff is aware that the entrance is not wheelchair accessible and there is no ramp

with a running slope no greater than 1:12, i.e. For every inch of height change at

least 12 inches of ramp run or, in the alternative, a removable ramp . 2010 ADA

Standards for Accessible Design – 405.2. This violation outside the facility and in

the parking lot made it impossible for Plaintiff go inside the Facility.  In addition,

this violation outside the facility and in the parking lot deters Plaintiff from going

inside the Facility, both as a bona fide patron and "tester," because she is aware that

physical barriers continue to exist. Removal of this architectural barriers is easily

accomplishable and able to be carried out without much difficulty or expense, i.e.

construction of a ramp or removable ramp.  42 U.S.C. § 12182(b)(2)(A)(iv).

q. On April 5, 2017, Plaintiff found that there was  purportedly "alternative access" to the goods and services by bringing the goods to the vehicle. However, either a ramp should be constructed o the defendant, in the alternative, the defendant can establish policies and procedures to help the disabled through a removable ramp. In addition, on April 5, 2017, Plaintiff used her mobile phone to request service while Plaintiff was in front of the Facility. However, when Plaintiff informed that she was Maria Suarez, the handicapped person, Ms. Saudi Rivera, and agent of the defendant, told Plaintiff that there was a problem in the communication and terminated the telephone call. Plaintiff redialed several times and Plaintiff's telephone calls were not answered. Defendant failed to remove barriers to the maximum extent feasible and, in the alternative, establish alternate methods under 42 U.S.C. Sec. 12182(b)(2)(iv), (v).

r. While at the time of Plaintiff's visit to the property in February 2016 there were no ADA compliant counters, Plaintiff is aware that the purported counter is wrongly obstructed with merchandise as a result of defendant's procedures and failure to maintain its counter. 28 C.F.R. § 36.211 requires that once a facility is brought into compliance with the relevant standards, accessibility be maintained so that persons with disabilities may continue to access and use the facility. The placement of large display baskets and other items interferes with the length of the counter and has created an "alcove" that obstructs access to the counter. See image below:




s.  While at the time of Plaintiff's visit to the property in February 2016 there were no ADA compliant restroom with grab bars and other deficiencies, Plaintiff is aware that side and back grab bars were installed. However, the side grab bar is not at least 42 inches long on the side wall. 2010 ADA Standards for Accessible Design – 405.2. Also, the newly installed grab bars were mounted more than 36 inches above the floor to the top of the gripping surface.  2010 ADA Standards for Accessible Design – 609.4. Also, the flush control of the new toilet is not on the open side of the water closet. 2010 ADA Standards for Accessible Design – 604.6. Also, 28 C.F.R. § 36.211 requires that once a facility is brought into compliance with the relevant standards, accessibility be maintained so that persons with disabilities may continue to access and use the facility. The placement of a trash can near the new toilet interferes with the clear floor space required. ADA Standards for Accessible Design – 604.3.1. s

12. Defendant's policy of obstructing the counter with merchandise or clear floor space at the restroom does not preclude plaintiff's claims under the voluntary cessation doctrine. Some Courts consider ADA barrier cases as a "unique subset" of voluntary cessation-doctrine cases. See Houston v. 7-Eleven, Inc., No. 13-60004-CIV, 2014 WL 351970, at *2 (S.D.Fla. Jan. 31, 2014). However, these courts rely on the basic principle that external circumstances can change such that it becomes clear that a defendant cannot reasonably be expected to resume a challenged activity. Id. at *3 ("Since 7-Eleven has made structural modifications to remove or remediate all ADA violations at the 7090 Store, this Court is convinced that the allegedly wrongful behavior could not reasonably be expected to recur.") Thus, "a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting [an] ADA claim." Oliver v. Ralphs Grocery Co., 654 F.3d 903, 905 (9th Cir.2011). This "is particularly true of structural modifications, which are unlikely to be altered in the future." Indep. Living Res. v. Oregon Arena Corp., 982 F.Supp. 698, 774 (D.Or. 1997) supplemented, 1 F.Supp.2d 1159 (D.Or.1998). Unlike other barriers, which require structural modifications, Defendant could easily revert to, for example, obstructing the counters through placement of merchandise. Defendant could also easily revert to failing to restripe its parking spaces given its historical failure to do so in compliance with the applicable regulations. The barriers at the counter (merchandise), restroom (obstruction of clear floor space), and parking (failure to restripe historically) involved are not so much structural in nature, as they are a maintenance issue pursuant to 28 C.F.R. § 36.211. Redesign, new construction, renovation, or any type of structural modification is not necessary in order to, for example, keep the counters fee of obstructions and the parking properly marked over time. Obstruction on counters merely depends on Defendant ordering

an employee to do things as always.  Given the nature of the barrier, Defendant's voluntary cessation of obstructing the counter or painting the parking in response to this lawsuit, if any, does not moot the controversy. Dismissing this case would leave Defendant free to return to their old way, as corroborated by the historical imagery.  Plaintiff cannot depend solely on Defendant's capricious actions

13.  While able-bodied individuals can have (i) access to the Facility using the public sidewalk and (ii) use the sidewalk, Plaintiff in contrast, cannot do not so because of the following barriers established and maintained by Co-Defendant Municipality of San Juan and Co-Defendant Commonwealth of Puerto Rico:

  a)  The sidewalk of Calle Cesar Gonzalez, San Juan (where the Facility is located) does not comply with the required width.  Sidewalk width requirements exist to make sure sidewalks are adequate for use by wheelchair-bound individuals. The minimum width for an ADA-compliant sidewalk is 36 inches (3 feet), though sidewalks can be constructed wider than this. If sidewalks are less than 60 inches (5 feet) across, passing spaces must be constructed at set intervals. These passing spaces must measure at least 60 inches on all sides, and must be located at least every 200 feet.

  b)  The sidewalk of Calle Cesar Gonzalez, San Juan (where the Facility is located) The sidewalk does not comply with the required surface texture.  Surface textures are important to ensure disabled individuals with mobility devices can safety traverse the sidewalk. The texture of a sidewalk must be firm, stable and slip-resistant. Care should be taken to ensure any concrete finishing meets these requirements. Additionally, any grates inset into the sidewalk must comply; to ensure that

mobility devices do not get stuck, any openings in the grate can be no larger than ½ inch across.

c) The sidewalk of Calle Cesar Gonzalez, San Juan (where the Facility is located) does not meet slope requirements. A sidewalk must have a slope of less than 1:20; otherwise it will be considered a ramp, and will be subject to a different set of ADA standards. Further, any changes to elevation in the sidewalk must be considered. An increase in elevation of more than ½ inch will require the construction of a ramp, elevator or other compliant facility.

d) The sidewalk of Calle Cesar Gonzalez, San Juan (where the Facility is located) does not comply with the curb ramp requirements.  Curb ramps are required wherever a sidewalk crosses a curb. This is particularly important at street intersections, where individuals will interact with traffic. These ramps must have a slope of less than 1:12, must be at least 36 inches wide and must contain a detectable warning device with a raised dome surface and contrasting color. Ramps must not project into the street, and where there is a marked crosswalk, the ramp must be contained entirely in the width of the crosswalk.

e) The sidewalk of Calle Cesar Gonzalez, San Juan (where the Facility is located) does not comply because of obstructions. While sidewalks may be located near obstructions, such as telephone or electric poles, if such obstructions exist, the sidewalk must be constructed to allow the minimum width requirement of 36 inches between the edge of an obstruction and the edge of the sidewalk. In some cases, if a sidewalk cannot be constructed to comply with this guideline, the obstruction may

need to be removed or relocated. The followings obstructions are found were identified at the subject sidewalk:

    i.  Motor vehicles. Co-Defendant City of San Juan and/or Co-Defendant Commonwealth of Puerto Rico granted express or implied permission to the following business to obstruct the public sidewalk by using the subject sidewalk as a parking space:  Sweet Gallery by Saudi, which is owned and operated by Co-Defendant Sandia LLC since 2012.

   ii.  Electric/telephone/utility poles.

  iii.  Infrastructure for advertisement and other purposes. This includes both movable and fixed property.



14.     Co-Defendant Sandia LLC, interference with Plaintiff's right to use the sidewalk, as it obstructs the public sidewalk for financial gain with the express or implied consent of City of San Juan and Commonwealth of Puerto Rico. Able-bodied individuals can use the sidewalk and enjoy a parking space at the Facility.  However, disabled individuals, like Plaintiff, are unable to use the sidewalk because of the current configuration of the parking spaces at the Facility.  This configuration results in obstruction of the sidewalk both by vehicles owned by Co-Defendant Sandia LLC or vehicles of patrons at Sweet Gallery by Saudi. The image below shows that the sidewalk is obstructed by Sandia LLC with its own vehicles and vehicles of its customers, given the configuration of the parking space. The parking at the Facility must be either reconfigured or the parking space must be eliminated in order to eliminate discrimination against the disabled at the sidewalk. In the alternative, Co-Defendant City of San Juan and/or Co-Defendant Commonwealth of Puerto Rico must be compelled to use its power of eminent domain to take a portion of the Facility to provide ADA compliance access to the sidewalk.

15.     The separate ADA violations identified in paragraphs 1 to 14 herein are only those that Plaintiff is aware of and constitute a concrete and particularized injury. Plaintiff is also deterred from visiting the Facility or using the sidewalk in the future because she is aware that physical barriers continue to exist. Plaintiff looks forward to return to the property once it is brought into ADA compliance in order to avoid unnecessary risk to her safety.

16.     On April 5, 2017 on or around 1:10 p.m, Plaintiff parked in front of the Facility. The parking space or sidewalk was sloped, making it unnecessarily difficult for Plaintiff to exit the vehicle. Plaintiff had to stay in the vehicle because of safety concerns and to avoid a potential psychical injury.  There, she contacted the Police of Puerto Rico and Plaintiff had

a conversation with Agent Rivera (No. 34004) of the Hato Rey West Precinct, who was there in vehicle number 9322. Agent Rivera can corroborate that the configuration of the parking space at the Facility obstructed the sidewalk; and he can corroborate that Plaintiff attempted to go inside he Facility.

17.     Plaintiff was, and continues to be, deterred from visiting the Facility and sidewalk because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff wants the type of goods and services offered at the Facility because of the Facility is close to his home, she is frequently in the area for medical reasons and litigation in the United Stated District Court for the District of Puerto Rico, shopping (although not necessarily buying) and would like to enjoy the unique cupcakes sold at the Facility, just like everyone else can do without being subjected to retaliation or questioning as to why she wants to buy a cupcake at the Facility. Plaintiff will return to the Facility once the barriers are removed.

18.     Defendants knew, or should have known, that these elements and areas of the Facility and sidewalk were inaccessible, violate federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility accessible to the physically disabled. To date, however, Defendants refuse to remove those barriers.

19.     At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the Facility and sidewalk to remove impediments to wheelchair access and to comply with the 2010 Standards for Accessible Design. Defendants have not

removed such impediments and have not modified the Facility to conform to accessibility standards. Defendants have intentionally maintained the Facility in its current condition and have intentionally refrained from altering the Facility so that it complies with the accessibility standards.

20.   Plaintiff further alleges that the (continued) presence of barriers at the Facility and sidewalk is so obvious as to establish Defendants discriminatory intent. On information and belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Facility; conscientious decision to maintain the architectural layout (as it currently exists) at the Facility; decision not to remove barriers from the Facility; and allowance that Defendants' property continues to exist in its non-compliance state. Plaintiff further alleges, on information and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

## CAUSE OF ACTION AGAINST OF ALL DFENDANT

### Americans with Disabilities Act of 1990

<u>Denial of "Full and Equal" Enjoyment and Use</u>

21.   Plaintiff incorporates the allegations contained in paragraphs 1 through 20.

22.   Title II forbids any "public entity" from discriminating based on disability; and Section 504 applies the same prohibition to any federally funded "program or activity." 42 U. S. C. §§12131–12132; 29 U. S. C. §794(a). A regulation implementing Title II requires a public entity to make "reasonable modifications" to its "policies, practices, or procedures" when necessary to avoid such discrimination. 28 CFR §35.130(b)(7) (2016); see, e.g.,

Alboniga v. School Bd. of Broward Cty., 87 F. Supp. 3d 1319, 1345 (SD Fla. 2015) (requiring an accommodation to permit use of a service animal under Title II). By reason of her disability, Plaintiff has been and continues to be denied "participation in ... the benefits of the services, programs, or activities of the City of San Juan and Commonwealth of Puerto Rico. 42 U.S.C. § 12132. She is unable to use the sidewalk of Calle Cesar Gonzalez, where the Facility is located.  See, e.g., Kinney v. Yerusalim, 9 F.3d 1067 (3d Cir.1993) (streets and sidewalks were city services); Tyler v. City of Manhattan, Kan., 857 F.Supp. 800 (D.Kan. 1994) (streets and sidewalks were services of city); Concerned Parents, 846 F.Supp. 986 (recreational programs were "service, program, or activity" of city). Co-Defendant Municipality of San Juan and Commonwealth of Puerto Rico deprived Plaintiff's rights under Title II of the ADA.

23.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a). Co-Defendant Sandia LLC deprived Plaintiff's rights under Title III of the ADA.  Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit or each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

24.   The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

25.   When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

26.   Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

27.   In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.  The availability of such alternate methods was not apparent, as there was no indication of signage to that effect.

<u>Failure to Design and Construct an Accessible Facility</u>

28.   Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

29.   The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

30.   Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.

<u>Failure to Make an Altered Facility Accessible</u>

31.     Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

32.     The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

33.     Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

34.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

35.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

36.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

37.     Upon information and belief, the transition plan of Co-Defendant Municipio de San Juan and/or Commonwealth of Puerto Rico, or lack thereof, fails to comply with the

requirements of 28 C.F.R. §35.105 Section II-5.3000 and otherwise violates the ADA by failing:

    a.  to conduct a self-evaluation of its services, policies, and practices make modifications necessary to comply with the Department's Title II regulations (28 C.F.R. Part 35), 28 C.F.R. §35.105; (The self evaluation of the venue is incomplete or is inexistent) II-8.2000 Self-evaluation.

    b.  to notify applicants, participants, beneficiaries, and other interested persons of their rights and the Defendant's obligations under Title II and the Department's regulations, 28 C.F.R. §35.106; (The "Transition Plan" does not show or detail how or when notice has been given to interested parties) II-8.4000 Notice to the public.

    c.  to designate a responsible employee to coordinate its efforts to comply and carry out the Defendant's ADA responsibilities, 28 C.F.R. § 35.107(a); (No individual has been designated as the responsible entity.) II-8.5000 Designation of responsible employee and development of grievance procedures.

    d.  to establish a grievance procedure for resolving complaints of violations of Title II, 28 C.F.R. § 35.107(b); (No grievance procedure has been delineated.)

38.    Defendant's facilities are required to comply with the Department of Justice's 2010 Standards for Accessible Design, or in some cases the 1991 Standards. 28 C.F.R. § 36.406; 28 C.F.R., pt. 36, app. A.

**CAUSE OF ACTION AGAINST CO-DEFENDANT SANDIA LLC**

**Article 1802 of the Civil Code of Puerto Rico**

<u>Denial of Access to Enjoyment and Use of Sidewalk</u>

39.     Plaintiff repeats and re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 38 above with the same force and effect as if herein set forth.

40.     On April 5, 2015, the Plaintiff, was in a motor vehicle at Ave Teniente Cesar Gonzalez at or near the Facility, within the Municipality of San Juan, Puerto Rico.

41.     At said time and place, Co-Defendant, Sandia LLC was operating a business know as Sweet Gallery by Saudi.

42.     At this time and place, it became and was the duty of the Defendant, Sandia LLC, to exercise due care and caution in the operation of its business, having due regard for the pedestrians and users of the sidewalk in front of its business.

43.      At this time and place, the Plaintiff, Suarez, was attempting to use the sidewalk in front of the business operated by the Co-Defendant Sandia LLC, as aforesaid.

44.     At this time and place, the Defendant, Sandia LLC negligently or intentionally placed its own motor vehicles (or vehicles of its agents) at the sidewalk, thereby obstructing Plaintiff liberty of movement freely thought the sidewalk.

45.     At this time and place, the Defendant, Sandia LLC negligently or intentionally configured a parking area in such a way that obstructed the sidewalk, causing an obstruction of the sidewalk by customers of Sandia LLC, thereby obstructing Plaintiff liberty of movement freely thought the sidewalk.

46.     The Defendant, Sandia LLC, was then and there guilty of one or more of the following negligent acts or omissions:

      a.   Negligently and carelessly configured its parking space resulting in obstruction of the sidewalk;

b.   Negligently and carelessly operated or its parking space resulting obstruction of the sidewalk;

c.   Negligently and carelessly operated its motor vehicle without regard to the pedestrians at the sidewalk;

d.   Negligently and carelessly allowed motor vehicles to obstruct the sidewalk without regard to the pedestrians at the sidewalk;

e.   Failed to do a professional assessment to avoid a obstructions of the sidewalk by reconfiguring its parking space or eliminating the parking space, although it had ample time and opportunity to avoid this result;

f.   Negligently operated its business and parking space in violations of local or state regulations by Co-Defendant Municipality of San Juan or Commonwealth of Puerto Rico.

g.   Negligently failed to seek assistance of by Co-Defendant Municipality of San Juan or Commonwealth of Puerto Rico in order to prevent the obstruction of the sidewalk.

h.   Negligently operated and configured its business so that it excluded access to Sweet Gallery by Saudi from the sidewalk.

i.   Negligently operated and configured its business so that it excluded access to Sweet Gallery by Saudi from accessible parking spaces at the business.

47.   As a direct and proximate result of one or more of these aforesaid negligent acts or omissions, the Defendant obstructed the sidewalk and deprived Plaintiff of her liberty of movement through the sidewalk of Calle Teniente Cesar Gonzalez to visit the adjacent business for testing purposes or as a bona fide client, causing the

Plaintiff emotional distress and humiliation, and loss of enjoyment of a normal personal life.

48.   Completely independent of the tortious conduct described in paragraph 47, as a direct and proximate result of one or more of these aforesaid negligent acts or omissions described in paragraphs 39-46, Sandia LLC obstructed Plaintiff's access to the Facility from the sidewalk and deprived Plaintiff of her right to do her testing activities and buying cupcakes at Sweet Gallery by Saudy, causing the Plaintiff emotional distress, humiliation, and loss of enjoyment of a normal personal life.

49.   The Plaintiff request a trial by jury on all issues triable by jury.

50.   The Plaintiff invokes the authority of the court to hear a Plaintiff's state law-claims related to the sidewalk in front of defendant's facility, a closely related state law claim against a party already facing a federal claim under the Americans with Disabilities Act. The Court has jurisdiction over nonfederal claims between parties litigating other matters properly before the court. 28 U.S.C § 1367.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for:

A.   A declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant's facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs or limited mobility;

B.   A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504 (a) which directs Defendant to take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set

forth in the ADA, and its implementing regulations, so that its facilities are fully accessible to, and independently usable by, individuals who use wheelchairs or individuals with limited mobility, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant's facilities come into compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

C.  Payment of costs of suit;

D.  Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

E.  Damages under Article 1802 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, § 5141, for emotional distress and humiliation, and loss of enjoyment of a normal personal life in an amount in accordance to evidence at jury trial.

**RESPECTFULLY SUBMITTED**,

**/S/JOSE CARLOS VELEZ-COLÓN, ESQ.**
**USDC-PR NO.: 231014**
jcvelezcolon@gmail.com

PO BOX 2013
BAYAMON PR 00960

TEL: (787) 599-9003

*Attorney for Plaintiff*